## Adam et al. v. Buffington et al.

*Ira P. Rothermel* and *Daniel G. Rothermel,* for plaintiffs.

*Stevens & Lee,* for defendants.

SCHAEFFER, P. J., February 5, 1934.—To the chancellor's findings of fact and conclusions of law the defendants have filed certain exceptions.

By their bill the plaintiffs, members of the Reformed Congregation of Zion's Union Church in Perry Township, Berks County, seek to have the court declare void the election of an elder, two deacons, and a trustee of said congregation. The election in question was held on Sunday, October 16, 1932, during, or

between parts of, the regular fall communion service. After consideration of the testimony offered and transcribed in the court record, the chancellor found that the congregational meeting at which the election was held was a special meeting, that there was no evidence that such special meeting had been called in any of the ways stipulated by the bylaws for the calling of special congregational meetings, and that therefore the meeting was not a lawful meeting and was without authority to elect congregational officers. These findings and conclusions are now challenged by the defendants.

During the trial of the case, there was offered in evidence section 1 of article II of the bylaws:

"Congregational Meetings.

"Section 1. The annual congregational meeting shall be held on New Year's day. Special congregational meetings shall be called by a majority of the consistory, or by 15 male members of these congregations; provided, the object of calling said meeting is stated in the request. No business shall be transacted at such special meetings except that for which they have been called. . . . The assembled members shall choose their own officers."

Section 2 of article III of the constitution was also offered in evidence, and is as follows:

"Section 2. Congregational meetings shall be held regularly on New Year. Special meetings shall be called by a majority of the consistory or of one third of the members submitted in writing, with a statement of the object and with their signatures to the consistory, they shall be duly announced by each pastor, with a statement of their object and shall be opened and closed with religious services."

These are the only provisions of the constitution and bylaws relating to congregational meetings which were specifically offered in evidence. Believing that congregational officers would be elected at a congregational meeting, the chancellor, of course, concluded that the meeting held on October 16th was not a regular congregational meeting and that therefore it necessarily was a special meeting.

But now, by their exceptions, the defendants call attention to section 1 of article IV of the bylaws, which is as follows:

"Section 1. The officers of these congregations shall consist of the following male members: 2 elders, 4 deacons, and 2 trustees on each side; 1 elder, 2 deacons and 1 trustee shall be elected annually by ballot on the fall communion Sunday to serve for a term of 4 years."

This section the chancellor did not have before him when he considered the case; it was not specifically offered in evidence, and was not transcribed in the record. At the close of the hearing, however, the attorney for the defendants referred to the constitution and bylaws and said: "If there are any other parts that we feel should be on the record, that may be done later"; and the court stated "You may refer to the whole constitution." It follows that we are justified and, in the interest of truth and justice, required to consider the provision that the election of congregational officers shall be held on the fall communion Sunday.

It is clear, therefore, that the meeting of the congregation on October 16, 1932, which was the fall communion Sunday for the Reformed Congregation, was not a special congregational meeting, and that therefore the provision of the constitution and bylaws governing the method of calling special meetings had no application and, finally, that the election held on that day cannot be declared void or illegal because of noncompliance with those provisions

covering the call of special meetings. We must accordingly sustain the first, second, fifth, and seventh exceptions.

This leaves for consideration the other matters alleged as irregularities in the conduct of that election. One of these is that the election was held in the midst of a communion service. But as the chancellor has said, we cannot declare the election illegal on that ground. The bylaws provide that the election should be held on the communion Sunday, but do not stiplate that it shall be during the service. According to the witnesses, the election never had been previously held during the service. We think that it is inappropriate to hold an election, especially when there is a contest, during a solemn religious service, and that such procedure should be discouraged; but we cannot declare the results of an election so held void upon that ground. The members of the congregation can by appropriate action provide for the holding of the election at a more proper time, if that be their wish.

Other objections to the validity of the election, raised by the bill, are that the pastor assumed the role of chairman of the meeting, appointed tellers, produced ballots upon which were printed the names of certain nominees, and had such ballots distributed without pencils being made available for use of the members who desired to write upon the ballot the names of other candidates; that the ballots were not signed by the parties casting them and no record of those voting was kept, and that ballots were distributed to persons who were ineligible to vote. These allegations raise questions concerning some things that may be considered of doubtful propriety in the conduct of a fair election, but they are not of such a character as to warrant us in setting aside the election. The contention of the plaintiffs that the pastor is not a member of the congregation is untenable, for article II of the constitution provides, under the title "Members"; "These congregations shall consist of the pastors and other members of the Church of Christ, who, etc."

The fact that the pastor presided at the election has not been shown to be contrary to any provision of the constitution or bylaws governing the conduct of the election on the fall communion Sunday nor to any custom or usage of the congregation. In fact, if the election be held during the communion service, it seems right and proper that the pastor should preside. The distributing of the ballots upon which were printed the names of one set of candidates and refusal to distribute the ballots containing the names of the opposition candidates may not have been impartial; but there appears to have been nothing to prevent other members from distributing the other ballots. Neither the furnishing of pencils nor the signing of the ballots by those voting has been shown to be enjoined by any rule or custom; in fact, the signing of the ballots would be incompatible with a secret election. It is no doubt true that some ballots were distributed to persons present who were not members and who had no right to vote; but it has not been shown that such, or many such, voted. The count disclosed that those who were declared elected received from 181 to 219 votes each, and that their opponents received from 21 to 61 votes each. In other words, the result was not close or indecisive, and we cannot conclude that the eradication of any of the matters complained of would have changed the result. "An election is not to be held void for mere irregularities in the conduct of the election, even though the election officers may be subject to punishment for misconduct; the rights of the voters are not to be prejudiced by the errors or wrongful acts of election officers": West Mahanoy Township's Contested Election, 258 Pa. 176.

"To warrant throwing out the vote of an entire district the disregard of the law must be so fundamental as to render it impossible to separate the lawful

from the unlawful votes": Ayre's Contested Election, 287 Pa. 135, 138. These principles apply equally to a church or corporate election as to a public election.

We are without authority to consider the noncompliance with article 48 of the constitution of the Reformed Church in the United States as to public notice of the nominations at least 1 week before the election, for the plaintiffs have not alleged this in their bill nor have they sought to amend. Nor can it be said with assurance that the provision is mandatory.

It would be obviously unfair to require the defendants to pay the costs. Nor do we consider it just to impose the costs upon the plaintiffs. The plaintiffs had a substantial, even if not legally sufficient, cause for complaint. Much that was done touching the election was unprecedented and unusual. The controversy had its basis in matters congregational and not personal. It is our conclusion, therefore, that the costs should be paid by the congregation.

And now, to wit, February 5, 1934, the bill is dismissed, and it is directed that the costs be paid by the Reformed Congregation of Zion's Union Church of Perry Township, Berks County, Pa.      From Charles K. Derr, Reading, Pa.